# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 6500 | DATE | 9/24/2002 |
| CASE TITLE | O'NEILL et al vs. O'CALLAGHAN et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, O'Callaghan and Syas' motion for summary judgment as to counts I, II, V, and VI is granted as to Syas and is denied as to O'Callaghan. O'Callaghan defendants' motion for summary judgment as to counts III and IV is granted. All claims against Syas are dismissed with prejudice and counts I, II, V, and Vi remain pending as to defendant O'Callaghan. Counts VII through X against defendant Butch McGuire also remain pending. All previously set dates shall stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | SEP 2 5 2002 date docketed | |
| | Notified counsel by telephone. | | | | 74 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | 9/24/2002 date mailed notice | |
| JS | courtroom deputy's initials | | 02 SEP 25 PM 1:50 | JS mailing deputy initials | |
| | | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Christopher T. O'Neill and )
P. Kevin Donahue, )
 )
    Plaintiffs, )
 )
v. ) No. 01 C 6500
 )
City of Chicago Police Officers )
J. O'Callaghan (Star No. 18573), L. Syas )
(Star No. 19154), and Butch McGuire's Inc., )
 )
    Defendants. )

DOCKETED
SEP 25 2002

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On August 21, 2001, plaintiffs Christopher T. O'Neill ("O'Neill") and P. Kevin Donahue ("Donahue") filed a ten-count complaint against Butch McGuire's, Inc. ("Butch McGuire's") and individual Chicago police officers John W. O'Callaghan ("O'Callaghan") and Verlisher H. Syas ("Syas"). In count I, O'Neill seeks damages under 42 U.S.C. § 1983 against O'Callaghan and Syas for unlawful arrest and excessive force. In count II, Donahue brings identical civil rights claims against O'Callaghan and Syas. In count III, O'Neill asserts a pendent state law claim for malicious prosecution against O'Callaghan and Syas. Count IV is an identical malicious prosecution action brought by Donahue against O'Callaghan and Syas. In count V, O'Neill seeks damages against O'Callaghan and Syas for false arrest and false imprisonment. Donahue asserts identical actions

1

against O'Callaghan and Syas in count VI. Counts VII-X allege malicious prosecution, false arrest, and false imprisonment against Butch McGuire's. On August 2, 2002, O'Callaghan and Syas moved for summary judgment under Federal Rule of Civil Procedure 56 as to counts I-VI.

Having considered this matter fully, for the reasons stated herein, as to counts I, II, V, and VI, O'Callaghan's and Syas's motion for summary judgment is granted as to defendant Syas and is denied as to defendant O'Callaghan. As to counts III and IV, summary judgment is granted as to both Syas and O'Callaghan. All claims against Syas are dismissed with prejudice, and counts I, II, V, and VI remain pending as to O'Callaghan. Finally, this court notes that because Butch McGuire's is not a party to this motion for summary judgment, counts VII through X also remain pending as to defendant Butch McGuire's.

## STATEMENT OF FACTS

Late on the night of December 30, 2000, plaintiffs O'Neill and Donahue, along with several other friends, walked to Butch McGuire's, a bar on Division Street in Chicago, Illinois. Approximately 15 to 30 minutes after arriving at Butch McGuire's, a booth opened up and four members of the group consisting of plaintiffs O'Neill and Donahue, along with non-parties Amy Fyfe ("Fyfe"), O'Neill's girlfriend, and Christine Briggs, a friend of Fyfe, sat down. After sitting down, waitress Dana Johnson ("Johnson") served the party two or three rounds of drinks. Some time later, Johnson took an order from a member of the group for a beer, served the beer, and requested payment. O'Neill told Johnson that no one had ordered a beer. The parties dispute the substance of the conversation between O'Neill and Johnson. After this conversation, Johnson summoned Gordon Kelly ("Kelly"), the manager/doorman at Butch McGuire's. Kelly approached the group, tapped O'Neill on the shoulder and said, "you have to go." O'Neill and Kelly moved a few feet

away from the table and had a discussion. Donahue overheard Kelly say that "you guys have to leave or he was going to get a police officer." (Pls.' Rule 56.1(b) Response, Ex. B at 54). Neither Kelly, nor any other Butch McGuire's employee, ever directly asked anyone in the group other than O'Neill to leave the bar.

O'Neill and others in the group remained inside Butch McGuire's. Kelly then asked another employee to get someone to help. The employee returned accompanied by defendant O'Callaghan. Kelly told O'Callaghan that he wanted the group to leave Butch McGuire's.[1] O'Callaghan approached the booth where the group was sitting. O'Neill got up from the booth and walked towards O'Callaghan. Standing a few feet away from the booth, O'Callaghan and O'Neill discussed the situation. The substance of this conversation is in dispute.

Defendants claim that O'Callaghan told O'Neill and the rest of the group that they had to leave. (Pls.' Rule 56.1(b) Response, Ex. D at 43, 56). Donahue recalls O'Callaghan, while talking with O'Neill, saying "[y]ou guys have to go" and "[y]ou have to leave." (Pls.' Rule 56.1(b) Response, Ex. B at 60). Donahue makes clear that O'Callaghan never directly addressed him. He simply overheard O'Callaghan's conversation with O'Neill. (Pls.' Rule 56.1(b) Response, Ex. B at 60). Donahue, O'Neill, and Fyfe all state that O'Callaghan never asked them to leave. (Pls.' Rule 56.1(b) Response, Ex. B at 64; Pls.' Rule 56.1(b) Response, Ex. A at 66; Pls.' Rule 56.1(b) Response, Ex. C at 46). Furthermore, the parties dispute whether O'Neill and Donahue were intoxicated. In addition, plaintiffs claim that they were getting ready to leave voluntarily when O'Callaghan was summoned.

---

[1] Plaintiffs argue that because Kelly has no recollection of his conversation with O'Callaghan, the substance of the conversation is in dispute. However, this court finds that Kelly's lack of memory does not make this is a disputed fact.

3

During their conversation, O'Callaghan told O'Neill that they should go outside to talk further. O'Neill turned to walk back towards the booth to retrieve his coat. Just as O'Neill put his coat on, O'Callaghan grabbed O'Neill's arms from behind, threw him against the door jam, and shoved him through the doorway. O'Callaghan then threw O'Neill against the trunk of a police car that was parked at the curb, kicked O'Neill's feet into a spread eagle position, and forced O'Neill's hands up on the trunk of the car. O'Callaghan then patted down O'Neill, removed his wallet, placed handcuffs tightly on his wrists, said, "you're going to my house tonight," and threw him into a police car. (Pls.' Rule 56.1(b) Response, Ex. A at 73). Eventually, O'Neill's handcuffs were loosened. The parties dispute how long O'Neill was handcuffed and whether he resisted arrest. (Pls.' Rule 56.1(b) Response, Ex. D at 61; Pls.' Rule 56.1(b) Response, Ex. E at 33; Pls.' Rule 56.1(b) Response, Ex. A at 74). O'Neill did not seek medical treatment for the red marks and bruising on his wrists that resulted from the tightness of the handcuffs.

Shortly after O'Neill was placed in the squad car, Donahue went outside of Butch McGuire's. At this time, he encountered O'Callaghan, who then arrested Donahue. It is undisputed for purposes of summary judgment that during the course of the arrest, O'Callaghan spun Donahue around, pushed him against a wall, grabbed his arms, and handcuffed him. Donahue suffered bruises and scratches to his wrists and had a sore shoulder from being handcuffed. After arresting O'Neill and Donahue, O'Callaghan brought blank Misdemeanor Complaint forms to Kelly, who signed the blank forms.

Defendant Syas, who also was patrolling Division Street, saw O'Callaghan arresting someone and approached to assist. Syas did not observe O'Neill's nor Donahue's arrests. After speaking with O'Callaghan, Syas filled out the signed complaint forms, which alleged criminal trespass, and signed

4

the arrest and general offense reports. She was able to complete the arrest paperwork based on information she obtained from plaintiffs' identification cards and from what O'Callaghan had told her. Kelly never saw a completed complaint.

Plaintiffs' first court appearances in state court on the trespass complaints were on February 21, 2001. When their case was called that day, plaintiffs were present. The state moved to "SOL" (stricken off, leave to reinstate the case) because the "complaining witness is not in court." (Defs.' Rule 56.1(a) Stmt., Ex. M at 2). Kelly was the "complaining witness." The court dismissed the cases against O'Neill and Donahue. No further state court action has been taken against plaintiffs as a result of this incident.

This court now considers O'Callaghan's and Syas's motion for summary judgment.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct.

5

2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

It is not the function of this court to scour the record in search of evidence to defeat a motion for summary judgment; the nonmoving party must identify with reasonable particularity the evidence upon which that the party relies. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The evidence relied upon must be competent evidence of a type otherwise admissible at trial. Id.

## ANALYSIS

As a preliminary matter, this court finds that plaintiffs' due process and equal protection claims are not cognizable. Counts 1 and 2 of plaintiffs' complaint are entitled "Violation of Civil Rights." Plaintiffs allege unlawful arrest and excessive force. In addition, they claim due process and equal protection violations. However, the Supreme Court has made clear that claims of arrest without probable cause and use of excessive force are analyzed under the Fourth Amendment probable cause and reasonableness tests. See Beck v. Ohio, 379 U.S. 89, 91 (1964); Graham v. Connor, 490 U.S. 386, 394 (1989). Likewise, plaintiffs cannot successfully bring their equal protection claims against defendants. See Sherwin Manor Nursing Center v. McAuliffe, 37 F.3d 1216, 1220 (7th Cir. 1994) ("To state an equal protection claim, a § 1983 plaintiff must allege that a state actor purposefully discriminated against him because of his identification with a particular (presumably historically disadvantaged) group."). Thus, plaintiffs' due process and equal protection claims are dismissed with prejudice, and this court will consider only the unlawful arrest and excessive force claims.

I.    Plaintiffs' Unlawful Arrest Claims

In order to succeed on a claim for unlawful arrest under 42 U.S.C. § 1983, O'Neill and Donahue must prove that they were arrested without probable cause. Booker v. Ward, 94 F.3d 1052, 1057 (7th Cir. 1996). Police officers have probable cause to arrest when "at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). The probable cause test is an objective one, and once an officer establishes "cause on every element of a crime, he need not continue investigating in order to test the suspect's claim of innocence." Kelley v. Myler, 149 F.3d 641, 646 (7th Cir. 1998). Upon review of the record, this court finds that there are genuine issues of material fact in dispute as to whether O'Callaghan had probable cause, thereby precluding summary judgment in his favor; however, there are no material facts in dispute as to Syas, and she is entitled to judgment as a matter of law.

A.    O'Callaghan

Under Illinois law, an offender commits criminal trespass when he or she 1) remains upon the land of another, 2) after receiving notice from the owner or occupant to depart. 720 ILCS 5/21-3(a)(3) (2002). Thus, for O'Callaghan to have probable cause to arrest plaintiffs, he must have probable cause on each of these elements. This court finds that there are material facts in dispute as to whether O'Callaghan had probable cause on these elements.

First, it is undisputed that Kelly told O'Neill "you have to go." While this provided O'Neill notice to depart Butch McGuire's, there is a dispute as to who talked with O'Callaghan and what was said to him. Viewing the facts in the light most favorable to plaintiffs, this court finds that there are

7

genuine issues of material fact as to whether O'Callaghan had probable cause to believe O'Neill remained on the premises after being asked to leave. It appears from the record that at most O'Callaghan was told that there was a problem in Butch McGuire's and that Butch McGuire's staff wanted the group to leave.[2] There is no evidence that O'Callaghan was told that anyone in O'Neill's and Donahue's group had been asked to leave Butch McGuire's. Although O'Callaghan knew that Butch McGuire's wanted the group to leave, this court cannot conclude at this time that as a matter of law, O'Callaghan had probable cause as to whether the group remained on the premises <u>after</u> receiving notice from the owner or occupant to depart.

O'Callaghan cites <u>Kelley</u>, supra, 149 F.3d 641, in support of his motion for summary judgment. However, the <u>Kelley</u> case is distinguishable from this case because the Seventh Circuit in <u>Kelley</u> makes clear that the manager of the restaurant told the arresting officer that the manager had already asked the plaintiff to leave the property. <u>Id.</u> at 644. Thus, as distinguished from the case at hand, the officer had probable cause to believe the plaintiff had been asked to leave the premises but remained anyway.

Furthermore, the parties dispute whether members of the group remained on the premises after being asked to leave. After O'Callaghan told O'Neill "you have to go," the two had a brief

---

[2] Defendants assert in their Reply Memorandum in Further Support of Their Motion for Summary Judgment that "it would have been reasonable for O'Callaghan to believe that Butch McGuire's staff summoned him after they were unsuccessful in getting Plaintiffs to leave." Defendants do not cite to any evidence substantiating that this is what O'Callaghan was thinking. This court finds that it is equally as reasonable for O'Callaghan to have believed that Butch McGuire's staff had not asked the group to leave. Bar staff may not want to get involved with confronting unruly patrons and instead may desire to have trained police officers ask such patrons to leave when so desired. This could help minimize public disputes between staff and customers. Thus, this court cannot find as a matter of law that O'Callaghan had probable cause to believe that plaintiffs remained after being asked to leave.

8

conversation, and O'Callaghan suggested that they go outside to discuss the incident. O'Neill then turned to get his coat. At most, a matter of seconds elapsed as O'Neill retrieved his coat. Thus, even if this constituted notice to depart the premises, O'Callaghan may not have had probable cause to believe O'Neill remained. This is a factual issue that precludes this court from granting summary judgment.

Moreover, there is a factual dispute as to whether the members of the group were getting ready to leave on their own when Kelly and O'Callaghan approached them. Defendants argue that actually remaining in Butch McGuire's speaks louder than the group members' words that they were going to leave. However, keeping in mind that this incident occurred within a very short period of time, plaintiffs may have been attempting to leave on their own with completion being thwarted by O'Callaghan's arrival. When O'Callaghan entered Butch McGuire's, he talked with O'Neill for a few seconds. There are material facts in dispute as to whether O'Neill and the rest of the group were on their way out of Butch McGuire's at this time and thus did not "remain" on the premises.

Second, defendants argue that Donahue was asked to leave by one of Butch McGuire's employees. Donahue admits that he heard Kelly say to O'Neill "you guys have to leave . . . ." (Pls.' Rule 56.1(b) Response, Ex. B at 54). Defendants assert that "guys" referred to the entire group and that this was notice from Kelly to Donahue to depart. However, Kelly never directed his remarks at Donahue. Neither Kelly, nor anyone from Butch McGuire's, ever directly told Donahue he had to leave. In addition, the record does not indicate that O'Callaghan ever told Donahue to leave. Thus, there are genuine issues of material fact as to whether Donahue was asked to leave Butch McGuire's, whether O'Callaghan had probable cause to believe that Donahue was asked to leave and

thereafter remained on the premises, and whether Donahue in fact remained on Butch McGuire's premises.

Summary judgment on probable cause is only appropriate "when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." Qian v. Kautz, 168 F.3d 949, 953 (7th Cir. 1999). Upon review of the record, this court finds that genuine issues of material fact exist as to the events that took place leading up to the alleged unlawful arrests. The parties dispute: (1) the timing of the events; (2) whether plaintiffs remained on the premises; (3) whether there was notice to leave; (4) what O'Callaghan was told; and (5) what O'Neill and Donahue were told. In this case, this court concludes, viewing the facts in a light most favorable to plaintiffs, as this court must in addressing a motion for summary judgment, that there remains room for a difference of opinion concerning facts surrounding plaintiffs' arrests.

B.  Syas

"Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983). Syas's role in O'Neill's and Donahue's arrests is undisputed. Syas filled out the signed blank Misdemeanor Complaint Forms and signed the arrest paperwork. Plaintiffs argue that by filling out the complaint forms, certifying that Kelly had read and signed the completed forms, despite the fact that they were blank when Kelly signed them, and signing the arrest reports, Syas "participated" in a constitutional deprivation. This court disagrees.

The constitutional deprivations of which plaintiffs complain are their individual arrests without probable cause. It is undisputed that these arrests occurred prior to Syas filling out the complaint forms or signing the arrest reports. In addition, Syas was not physically present as

10

O'Callaghan arrested O'Neill and Donahue. Syas merely performed the ministerial act of filling out the criminal complaints and signing the arrest reports <u>after</u> O'Callaghan had placed the plaintiffs under arrest. Syas filled out the complaints only after the plaintiffs were in custody and "seized" within the meaning of the Fourth Amendment. Syas would have had to have undertaken some action prior to, or at the time of, the plaintiffs' arrests to have "participated" in them. <u>See</u> <u>Jenkins v. Keating</u>, 147 F.3d 577, 583-84 (7th Cir. 1998). Therefore, this court concludes that, as a matter of law, Syas did not "participate" in a constitutional deprivation.

Moreover, even if Syas had participated in the alleged constitutional deprivation, this court would find that she had probable cause to fill out the complaint forms based on what O'Callaghan had told her. "Police officers are entitled to rely on allegations of other officers." <u>Marchetta v. Chicago Transit Authority</u>, 2002 WL 172447, at *4 (N.D. Ill. 2002) (citing <u>Martinez v. Simonetti</u>, 202 F.3d 625, 634 (2d Cir. 2000)). In addition, "[t]he police who actually make the arrest need not personally know all of the facts that constitute probable cause if they reasonably are acting at the discretion of another officer or police agency." <u>Id.</u> (citing <u>United States v. Valencia</u>, 913 F.2d 378, 383 (7th Cir. 1990)). Furthermore, "an officer has probable cause to arrest an individual on information obtained from an eyewitness who it seems reasonable to believe is telling the truth." <u>Jenkins</u>, 147 F.3d at 585-86. Here, O'Callaghan relayed to Syas all of the information she knew about plaintiffs' arrests. She had no independent knowledge of the circumstances of the arrests. She simply filled out the paperwork according to what O'Callaghan had told her. Because it was reasonable for Syas to rely on what a fellow officer had told her, and because she did not possess any contradictory information to make her question what O'Callaghan had said, Syas in entitled to summary judgment in her favor as to each plaintiff's unlawful arrest claim.

II.  Plaintiffs' Excessive Force Claims

The Fourth Amendment prohibits police officers from using excessive force in effectuating an arrest. Graham v. Connor, 490 U.S. 386, 394 (1989). The Fourth Amendment's reasonableness test governs the inquiry. See id. at 396. "Because '[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,' ... its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (citations omitted). This court finds that because there are material facts in dispute, O'Callaghan is not entitled to summary judgment; however, Syas is entitled to judgment as a matter of law.

A.  O'Callaghan

O'Callaghan contends that as a matter of law he did not use excessive force against plaintiffs. As discussed above, material facts as to exactly what happened prior to the use of force against plaintiffs remain in dispute. There are also material facts in dispute as to whether O'Neill resisted arrest, whether O'Neill and Donahue were intoxicated, whether O'Neill and Donahue posed a threat to O'Callaghan's safety, and the force used and tightness of the handcuffs. Because plaintiffs' excessive force claims turns on which of two conflicting stories best states what happened, this court cannot grant summary judgment in favor of O'Callaghan.

Furthermore, accepting as true plaintiffs' version of the facts, this court cannot find that as a matter of law O'Callaghan's arrests of plaintiffs were reasonable. O'Callaghan cites Smith v. Ball State Univ., 295 F.3d 763 (7th Cir. 2002), in support of his motion for summary judgment. In Smith, the defendant police officer used a "straight arm bar" and "knee strike" to forcibly remove an

12

unresponsive driver from his car. Officers then handcuffed Smith as his face was held to the ground. Id. at 766-67. The Seventh Circuit in Smith determined that the officers' use of force was not excessive under the circumstances. The court held that the officers were justified in using this degree of force, particularly in light of the public safety concerns of a possibly intoxicated driver in command of a running vehicle. Id. at 770. In the case at hand, however, there is no indisputable evidence that plaintiffs were unresponsive or posing a safety threat to O'Callaghan or the public. Rather, there is a factual dispute as to whether plaintiffs were intoxicated or resisted arrest. Because of this, summary judgment is not proper.

  B. Syas

As discussed above, an individual does not have liability under § 1983 unless he or she "participated" in the constitutional deprivation. See Wolf-Lillie, 699 F.2d at 869. It is undisputed that Syas did not physically arrest the plaintiffs. Furthermore, Syas's filling out of the complaint forms and signing the arrest reports occurred after the plaintiffs were arrested. It is clear to this court that Syas did not participate in depriving the plaintiffs of their rights to be free from excessive force during an arrest. Therefore, she is entitled to summary judgment on this claim.

III. Qualified Immunity

Defendants claim that they are entitled to qualified immunity on plaintiffs' unlawful arrest and excessive force claims. However, this court cannot conclude that O'Callaghan is entitled to a qualified immunity defense where there are material facts in dispute. Apostol v. Gallion, 957 F.2d 339, 342-43 (7th Cir. 1992). "[I]f the parties were disputing who did what, when, any question of qualified immunity would have to wait until those fact issues were resolved." Meyer v. Robinson, 992 F.2d 734, 737 (7th Cir. 1993). Because "the facts are in hot dispute, the officers cannot seek

pretrial refuge behind a claim of qualified immunity." Dufour-Dowell v. Cogger, 152 F.3d 678, 678 (7th Cir. 1998). Accordingly, this court cannot grant summary judgment in O'Callaghan's favor as to these claims.

However, this court finds that Syas is entitled to qualified immunity with respect to the unlawful arrest claim. A two-step analysis is applied to determine if an officer is entitled to qualified immunity. First, this court must determine whether the facts, taken in the light most favorable to the plaintiffs, demonstrate that the officer's conduct violated a constitutional right. Second, this court must determine whether the constitutional standards were clearly established at the time in question. Saucier v. Katz, 533 U.S. 194, 201 (2001). Plaintiffs have the burden of establishing that the law was clearly established at the time of the alleged unlawful arrest and that the defendants violated this right. Plaintiffs can point to no case law, and this court has found none, that would have put Syas on notice that by filling out blank complaint forms after the complainant had signed them or by signing an arrest report she was violating plaintiffs' constitutional rights. Syas, therefore, is entitled to qualified immunity.

IV.  Plaintiffs' Malicious Prosecution Claims

In addition to their federal question claims, plaintiffs bring pendent state law malicious prosecution claims against the defendants. To make out a claim of malicious prosecution, plaintiffs must allege: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff. See Swick v. Liautaud, 169 Ill.2d 504, 512, 662 N.E.2d 1238, 1242 (1996). "The absence of any one of these elements bars a plaintiff from pursuing the claim." Id. The primary

14

issue before this court is whether the criminal proceedings commenced against plaintiffs terminated in their favor. This court finds, based on the undisputed material facts, that plaintiffs cannot meet their burden of proving that the criminal proceedings were terminated in their favor.

Under Illinois law, "a malicious prosecution action cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused." Swick v. Liautaud, 169 Ill.2d 504, 512, 662 N.E.2d 1238, 1242 (Ill. 1996). This determination is made by looking at the circumstances, not the form or title, under which the disposition is obtained. See Cult Awareness Network v. Church of Scientology Int'l, 177 Ill.2d 267, 685 N.E.2d 1347, 1352-53 (Ill. 1997). "Where the disposition is indicative of a lack of probable cause to bring the earlier case, it will constitute a 'favorable termination' for purposes of asserting a malicious prosecution claim." Velez v. Avis Rent A Car System, Inc., 308 Ill. App. 3d 923, 928, 721 N.E.2d 652, 656 (1st Dist. 1999).

Plaintiffs bear the burden of proving the termination of their criminal case was for reasons consistent with their innocence. Swick, 169 Ill.2d at 513-14, 662 N.E.2d 1243. "The circumstances surrounding the abandonment of the criminal proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." Id. Here, plaintiffs appeared in state court on the criminal trespass charges on February 21, 2001, for the first time. Upon the court calling the case, Assistant State's Attorney Michelle Patsy stated to the court: "Complaining witness is not in court. Motion State SOL." (Defs.' Rule 56.1(a) Stmt., Ex. M at 2). "SOL" is short for "stricken off, leave to reinstate." The court did not hear any evidence and dismissed the cases. These facts are not in dispute.

15

This court finds that plaintiffs have failed to produce any evidence from which it may be inferred that their cases were dismissed because of lack of probable cause. Neither O'Callaghan nor Syas was the complaining witness. Kelly was the complaining witness. Neither O'Callaghan nor Syas was subpoenaed or notified by the state to be in court that day. Neither was required to appear in court for plaintiffs to be prosecuted. Kelly, as the complaining witness, could, if accepted by the trier of fact, provide sufficient evidence to find plaintiffs guilty of criminal trespass. There is nothing about the circumstances of the dismissals to establish they were indicative of innocence. The court did not hear any evidence about probable cause or any other lack of reasonable grounds to pursue the criminal action, nor have the plaintiffs introduced such evidence. Dismissal with leave to reinstate, by itself, does not give rise to an inference of innocence; rather, to this court, it appears that the cases against plaintiffs were dismissed solely because of the failure of the complaining witness, Kelly, to appear in court.

Plaintiffs cite Velez, 308 Ill. App. 3d 923, 721 N.E.2d 652, in support of their opposition to summary judgment. This court finds Velez distinguishable from the facts of this case. In Velez, Avis filed a criminal complaint against the plaintiff alleging criminal damage to property. The complaint was ultimately stricken with leave to reinstate. Avis thereafter refiled. Plaintiff demanded a speedy trial. However, Avis did not proceed to trial, and the case was once again stricken with leave to reinstate. Velez, 308 Ill. App. 3d at 924-25, 721 N.E.2d at 653. In the present case, Kelly, not O'Callaghan or Syas, is the complaining witness. The defendants have not refused to proceed with the cases against plaintiffs, for they have no obligation to appear in court. Moreover, the circumstances of the dismissal in plaintiffs' cases do not come after a demand for a speedy trial nor after a second motion to strike with leave to reinstate.

Therefore, because plaintiffs cannot meet their burdens of proving that the criminal cases were terminated in their favor, O'Callaghan and Syas are entitled to summary judgment on the malicious prosecution claims.

V.  Plaintiffs' False Arrest and False Imprisonment Claims

Under Illinois law, "[t]he essential elements of a cause of action for false arrest or false imprisonment are that the plaintiff was restrained or arrested by the defendant, and that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff." Meerbrey v. Marshall Field & Co., Inc., 139 Ill.2d 455, 474, 564 N.E.2d 1222, 1231, 151 Ill.Dec. 560, 569 (Ill.1990). This court finds that there are material facts in dispute as to O'Callaghan, which precludes summary judgment; however, Syas is entitled to summary judgment in her favor.

A.  O'Callaghan

Defendants assert that O'Callaghan's probable cause bars plaintiffs' false arrest and false imprisonment claims. However, because disputed material issues of fact remain regarding the circumstances surrounding plaintiffs' arrests and whether O'Callaghan had probable cause to arrest plaintiffs, this court cannot grant O'Callaghan's motion for summary judgment on these state law claims.

B.  Syas

It is undisputed that Syas did not "restrain" or "arrest" the plaintiffs. A person is arrested or seized "[w]henever an officer restrains the freedom of a person to walk away . . . ." Tennessee v. Garner, 471 U.S. 1, 7 (1985). Syas's acts of filling out the complaint forms and signing the arrest reports clearly took place after plaintiffs were restrained and arrested. Plaintiffs do not allege any other facts that would suggest that Syas in any way restrained or arrested plaintiffs. Furthermore,

17

plaintiffs fail on the second prong of the definition. This court found in part I.B. of this option that Syas did have reasonable grounds to believe plaintiffs had committed the offense of criminal trespass. She was justified in relying on what O'Callaghan had told her. This court concluded that she therefore had reasonable grounds to fill out the complaint and sign the arrest report. Thus, Syas is entitled to summary judgment on the false arrest and false imprisonment claims.

## CONCLUSION

For all the above stated reasons, defendants' motion for summary judgment as to counts I, II, V, and VI is granted as to Syas and is denied as to O'Callaghan. Defendants' motion as to counts III and IV is granted as to both Syas and O'Callaghan. All claims against Syas are dismissed with prejudice, and counts I, II, V, and VI remain pending as to O'Callaghan. Counts VII through X against Butch McGuire's also remain pending. All previously set dates stand.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: September 24, 2002